**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHRISTOPHER MIELO and SARAH )
HEINZL, *individually and on behalf of all* )
*others similarly situated*, ) Civil Action No. 15-180
         Plaintiffs, )
) Magistrate Judge Robert C. Mitchell
    v. )
)
STEAK 'N SHAKE OPERATIONS, INC., )
      Defendant. )

## OPINION

Presently pending before the Court is a Motion for Class Certification filed on behalf of

Plaintiffs Christopher Mielo and Sarah Heinzl (ECF No. 44). For the reasons stated herein, the

motion will be granted.

Plaintiffs move the Court for an Order certifying this action as a class action pursuant to

Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, and seek certification of a class

defined as follows:

> All persons with qualified mobility disabilities who were or will be denied the full
> and equal enjoyment of the goods, services, facilities, privileges, advantages or
> accommodations of any Steak 'n Shake restaurant location in the United States on
> the basis of a disability because such persons encountered accessibility barriers at
> Steak 'n Shake restaurant where Defendant owns, controls and/or operates the
> parking facilities.

(ECF No. 44-1).

## I.  Factual and Procedural History

Plaintiffs Mielo and Heinzl bring this action individually and on behalf of all others

similarly situated against Steak 'n Shake Operations, Inc., alleging violations of Title III of the

Americans with Disabilites Act, 42 U.S.C. § 12101 et seq., (the "ADA") and its implementing

regulations. Specifically, Plaintiffs allege that the various properties owned and managed by

Defendant are not fully accessible to and independently usable by individuals who use wheelchairs or are otherwise mobility disabled.

Discovery in this case ended on December 5, 2016. Plaintiffs' Motion for Class Certification (ECF No. 44) was filed on November 4, 2016 and was accompanied by a brief in support (ECF No. 45). Defendant filed a brief in opposition (ECF No. 60) and Plaintiffs filed a reply brief (ECF No. 68). On March 20, 2017, the Court held oral argument on the motion and took it under advisement. (ECF No. 72).

The following facts are not in dispute. Plaintiff Mielo is a self-employed business owner, who currently resides in Pittsburgh, Pennsylvania. He is a paraplegic and uses a wheelchair to ambulate. He has long been an advocate for individuals with disabilities. His work includes the "Unbreakable Drive" project, where he speaks to youth with disabilities throughout the United States, and his participation in the Pennsylvania Youth Leadership Network, where he is a board member and, among other things, helps advance leadership training, community outreach and diversity.

Plaintiff Heinzl attends graduate school in Arizona, and permanently resides in Pittsburgh, Pennsylvania. She is a paraplegic and uses a wheelchair to ambulate. She is involved in advocacy work for individuals with disabilities, including work for the Three Rivers Center for Independent Living, where she coordinated and taught youth events; serving as a board member for the Children's Hospital Advisory Network, where she assisted youth in transitioning from pediatric to adult care; working at the LEND program run through the University of Pittsburgh; and, participating in other fundraising and volunteer activities.

Both Mr. Mielo and Ms. Heinzl have visited various restaurants owned and/or operated by Defendant and have experienced difficulty accessing these restaurants as a result of

architectural barriers in the parking facilities. For example, Mr. Mielo had trouble accessing Defendant's 650 Waterfront Drive, East Munhall, Pennsylvania restaurant due to an excessively sloped parking space and access aisle at that location. Similarly, Ms. Heinzl experienced difficulty at Defendant's 410 Clairton Boulevard, Pleasant Hills, Pennsylvania restaurant due to excessive slopes in the parking spaces, access aisles, and in the route to the restaurant. Once identified, Plaintiffs' counsel instructed investigators to examine multiple of Defendant's restaurants located in Pennsylvania and Ohio. This investigation identified architectural barriers in the parking facilities at eight of Defendant's restaurants within that geographic region, specifically, in some cases, accessible parking spaces and access aisles with slopes exceeding the 2.1% limit.

## II. Discussion

### A. **The ADA**

Title III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." 42 U.S.C. § 12182(a);  *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128 (2005). Specifically, it requires "places of public accommodation" to "remove architectural barriers … in existing facilities … where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), and to "design and construct facilities for first occupancy [no] later than 30 months after July 26, 1990 that are readily accessible to and usable by individuals with disabilities," § 12183(a). Places of public accommodation include "a restaurant, bar, or other establishment serving food or drink," 42 U.S.C. § 12181(7)(B), and thus include Steak 'N Shake. Failure to meet these requirements constitutes a violation of the ADA which may be enforced by individuals bringing suit for injunctive relief in federal court, § 12188(a). The statute further states that "injunctive relief shall also include … modification of a

policy….” *Id.* “Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available.” *Anderson v. Macy's, Inc.,* 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citation omitted). See 42 U.S.C. § 12188(a) (providing that the remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a-3(a), which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (noting that Title II allows for injunctive relief only).

“Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ('ADAAG'), which lay out the technical structural requirements of places of public accommodation.” *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1006 (9th Cir. 2015). The ADAAG is promulgated by the Department of Justice pursuant to 42 U.S.C. § 12186(b). There are two active ADAAGs, the 1991 ADAAG Standards (“1991 Standards”), 28 C.F.R. § pt. 36, App. D, and the 2010 ADAAG Standards (“2010 Standards”) 36 C.F.R. § pt. 1191, App. D.

Title III's implementing regulations further require places of public accommodation to “maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities[.]” 28 C.F.R. § 36.211(a). This ongoing obligation “broadly covers all features that are required to be accessible under the ADA.” See Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34508, 34523 (June 17, 2008) (emphasis in original) (hereinafter “Department Comments”). While isolated or temporary accessibility failures due to maintenance or repairs are permitted, see 28 C.F.R. § 36.211(b), places of public accommodation may not allow inaccessibility to persist beyond a reasonable period of time, allow accessible

features to repeatedly fall out of compliance, or fail to arrange for prompt repair of inaccessible features violate the ADA. *See* 28 C.F.R. pt. 36 app. C § 36.211; Department Comments, 73 Fed. Reg. at 34523.

The Court has recognized Title III and its implementing regulations "contemplate an ongoing process of effective ADA compliance." *Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 14-cv-1455, 2016 WL 2347367, at *17 (W.D. Pa. Jan. 27, 2016). Other district courts have reached similar conclusions. *See, e.g., Sawczyn v. BMO Harris Bank Nat. Ass'n*, 8 F. Supp. 3d 1108, 1113-15 (D. Minn. 2014) (recognizing maintenance obligation in voluntary cessation context); *Thomas v. Branch Banking and Trust Co.*, 32 F. Supp. 3d 1266, 1271 (N.D. Ga. 2014); *Nat'l All. for Accessibility, Inc. v. McDonald's Corp.*, No. 8:12-cv-1365, 2013 WL 6408650, at *7 (M.D. Fla. Dec. 6, 2013); *Moeller v. Taco Bell Corp.* ("Moeller" I"), 816 F. Supp. 2d 831, 869 (N.D. Cal. 2011) (holding class-wide injunctive relief warranted where defendant systematically violated ongoing maintenance obligation); *see also Cupolo v. Bay Area Rapid Transit,* 5 F. Supp.2d 1078, 1084-86 (N.D. Cal. 1997) (entering preliminary injunction to ensure defendant complied with duty to maintain in Title II context).

Plaintiffs contend that Defendant has adopted an ADA compliance policy that largely ignores its obligation to ensure its parking facilities become and remain accessible to individuals with disabilities. Specifically, when a restaurant is built, Defendant does not conduct an independent post construction assessment to determine whether architectural barriers actually exist in its parking facilities, but rather, relies exclusively on purportedly ADA complaint design plans as its sole means of ensuring a parking facility is constructed in compliance with the ADA. *See* Duffner Dep.31:7-33:1.[1]  Plaintiffs contend that Defendant's policy of burdening its

---

[1]     Q.  Do you know of any formal written policy at Steak 'n Shake regarding ADA, Americans with Disabilities Act, accessibility in its parking facilities?

customers with the responsibility of identifying architectural barriers is in plain violation of Defendant's ongoing statutory duty to proactively maintain the accessible features of its restaurants. See 28 C.F.R. § 36.211; 28 C.F.R. pt. 36 app. C § 36.211; Department Comments, 73 Fed. Reg. at 34523. More fundamentally, forcing individuals with disabilities to complain about discrimination before anything is done to remediate discriminatory conditions conflicts with the ADA's purpose.

Defendant argues that we adopt an interpretation of the ADA that substantially limits the maintenance obligation of public accommodations under 28 C.F.R. § 36.211 to temporary mechanical failures and easily movable obstructions. Defendant argues that when Section 211 requires public accommodations to "maintain *in operable working condition* those features of facilities and equipment that are required to be readily accessible to and useable by persons with disabilities[.]", 28 C.F.R. § 36.211(a) (emphasis provided), what the Department of Justice intended was the public accommodations maintain machines and equipment "in operable working condition." Defendant cites to DOJ commentary when issuing the Final Title III Rules, 56 Fed. Reg. 7452 (July 26, 1991) (emphasis added), reprinted at 28 C.F.R. Part 36, App. C., which place emphasis on equipment and mechanical failures. Defendant also notes that the DOJ could have included the obligation to maintain accessible features had it wanted to, having done so in ADA's Title II context.

Defendant also notes that in June 2009, the DOJ published "technical guidance" on the "maintenance" obligation in Section 211 in the form of guidance and a detailed "checklist" entitled "Maintaining Accessible Features in Retail Establishments." This checklist does not

A. No.
       \*   \*   \*
Q. Does Steak 'n Shake currently conduct a similar ADA-related audit or inspection of any sort with regard to its corporate-owned or leased facilities?
A. Only in response to specific complaints.

mention slope ratios or the use of a slope meter. However, it is clear that this guidance was intended to help businesses to maintain their investment as accessible "with little or no extra cost," rather than providing clear legal direction.

The DOJ's Notice of Proposed Rule Making issued on June 17, 2008 states as follows:

> The Department has noticed that some covered entities do not understand what is required by § 36.211, and it would like to take the opportunity presented by this NPRM to clarify. Section 36.211(a) broadly covers *all* features that are required to be accessible under the ADA, from accessible routes and elevators to roll-in showers and signage. It is not sufficient for a building or other feature to be built in compliance with the ADA, only to be blocked or changed later so that it is inaccessible.

Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34508, 34523 (June 17, 2008) (emphasis in original). This interpretation is entitled to substantial deference, as Defendant admits. For the purpose of deciding the motion before us, we agree with Plaintiffs. Defendant's interpretation of Section 211 contravenes the purpose of the ADA, that facilities be built and altered so as to be readily accessible to and usable by individuals with mobility disabilities.

B.     **Rule 23 Requirements**

"To obtain class action certification, plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). In determining whether a class will be certified, the substantive allegations of the complaint must be taken as true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Court is not, however, limited to the pleadings. *See Newton v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* 259 F.3d 154, 168–69 (3d Cir. 2001) ("In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class

action.").

We have reviewed the various evidentiary submissions presented in the record. As the United States Supreme Court stated in *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011), the "rigorous analysis" demanded in reviewing a motion for class certification "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. [T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (citing *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Moreover, when doubt exists concerning certification of the class, the court should err in favor of allowing the case to proceed as a class action. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Agmen Inc. v. Connecticut Retirement Plans and Trust Funds,* —— U.S. ——, —— 133 S.Ct. 1184, 1194–95, 1201 (2013) (holding that under the plain language of there-applicable Rule 23(b)(3), plaintiffs need not prove essential predicate of fraud-on-the-market theory at the class certification stage and rejecting the argument that the court hold a mini-trial at the class certification phase because denial of certification would not bind non-named class members); *see also Tyson Foods, Inc. v. Bouaphakeo,* -- U.S. --, ---, 136 S. Ct. 1036, 1047 (2016).

It is within this context that we have considered and rejected the Defendant's arguments on the merits.

Rule 23(a) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. To certify a class the court must thus find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir.2008) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir.2008)). "[T]he decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met." *Id.* at 307.

As explained *supra*, in objecting to certification of the class, Defendant argues Plaintiffs have completely mischaracterized the sweep and intent of 28 C.F.R. § 36.211 ("Section 211"). Defendant argues that absent a policy requirement, commonality is not met, and it does have a legal obligation with respect to the class. According to Defendant there is no evidence at all of "systematic discrimination" at the eight locations visited by Plaintiffs' investigators, let alone across the more than 400 restaurants in the chain. As to numerosity, Defendants contend Plaintiffs rely on mere statistics and assumptions on numerosity and fail to provide direct evidence. Defendants argue Plaintiffs' adequacy as class representatives is undermined by the differing interests from the class. Finally, Defendant contends Plaintiffs lack standing to seek injunctive relief because each experienced barriers at only one of several locations visited, has no intention of returning and has not since the Complaint was filed.

**1. Rule 23(a)(1): Numerosity**

The numerosity requirement is satisfied only where, looking at the totality of the circumstances, joinder is sufficiently impracticable. *Baby Neal*, 43 F.3d at 56. Our appellate court has held that "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). The court must find based on a preponderance of the evidence that plaintiff has met the numerosity requirement. *Hydrogen Peroxide*, 552 F.3d at 307. Rule 23 does not require a plaintiff to offer direct evidence of the exact number and identities of the class members, but in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the problems, parties, and geographic areas actually covered by a class definition to allow the court to make factual findings respecting numerosity. *Marcus v. BMW of North America, LLC,* 687 F.3d 583, 596 (3d Cir. 2012). Mere speculation is insufficient. *Id.* Only then may the court rely on "common sense" to forgo precise calculations and exact numbers. *Id.* (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 468, 510 (D. N.J. 1997)).

Defendant argues that Plaintiffs have failed to prove numerosity because there is insufficient direct or circumstantial evidence specific to the problems, parties, and geographic areas actually covered by a class definition to allow the court to make factual findings respecting numerosity. According to Defendant Plaintiffs haven't shown evidence on which  an estimate of the number of class members who encountered barriers at Steak 'N Shake restaurants can be rationally based, characterizing  Plaintiffs'  "showing" as consisting of national census data, a witness' unqualified speculation and common sense.

Defendant distinguishes this case from *Cracker Barrel*, wherein Heinzl expanded her investigation to include more than 100 of Cracker Barrel's properties located throughout seven states. 2016 WL 2347367, at *6. This investigation identified a total of 107 Cracker Barrel stores with ADA noncompliant parking facilities, which violated the ADA in multiple ways. Here, Plaintiffs proffer evidence with respect to far fewer locations and some demonstrate ADA compliance.

Nevertheless, given that the numerosity standard may be relaxed in cases where injunctive and declaratory relief is sought, and based on the statistical census data concerning the numbers of persons with mobility disabilities, as well as and considerations of judicial economy, we find that plaintiffs have met their burden with respect to numerosity. Plaintiffs have shown sufficient circumstantial evidence specific to the problems, parties, and geographic areas actually covered by a class definition. Joinder of individual claims and parties would simply not be practicable given the specific facts of this case, which includes a potentially high number of individuals with mobility disabilities from multiple states.

### 2. Rule 23(a)(2): Commonality

The commonality requirement in Rule 23(a) "does not require an identity of claims or facts among class members; instead, [it] 'will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.' " *Johnston v. HBO Film Management, Inc.,* 265 F.3d 178, 183 (3d Cir. 2001) (quoting *In re the Prudential Ins. Co. of Am. Sales Practices Litig*., 148 F.3d 283, 310 (3d Cir. 1998)). "Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be common to the class." *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988).

Defendants argue that Plaintiffs have failed to prove commonality for a number of reasons. First, Defendants contends that commonality cannot be supported by an alleged violation of a non-existent obligation under 28 C.F.R. § 36.211, arguing that Section 211 does not create an ongoing obligation to cause architectural compliance with the ADA Standards, nor does it require a public accommodation to guarantee its facilities' permanent adherence to each of the ADA Standards (including slope restrictions). Moreover, Defendant contends that Plaintiffs lack the requisite "significant proof" that Steak 'N Shake's purported ADA compliance plan has resulted in a "general policy of discrimination." *Dukes*, at 2553, 2556. According to Defendant, its compliance efforts mirror and exceed those recommended in the DOJ's Maintenance Guidelines. Defendants do not view the few noncompliant measurements taken at eight restaurants as showing an ineffective policy, or that the noncompliant measurements were caused by the policy. Finally, Defendant argues that even if the instances of noncompliance were sufficient evidence of a systemic policy of discrimination, the Court would still be faced with at least a handful of individualized inquiries at each of the more than 400 locations, thereby destroying commonality, because the injunctive relief sought would require defendant to remediate its past effects.

Yet thus far the evidence suggests that this case should proceed as a class action, as the exploration of defendant's policy will produce common questions with common answers. The Plaintiffs have shown sufficient evidence – at this juncture -- that Defendant applies the same ADA maintenance policies and practices in a uniform way to the restaurants it owns and controls, which may prove to be harmful to the class members protected rights. To the extent Defendant relies on its existing practice of having a technician perform a circular route of the properties, we note that the facility inspection sheet attached to the Declaration of Che Parker

(ECF No. 64-12) appears not to mention the ADA component of slopes in parking spaces and ramps. And corporate designee Scott Duffner states that Steak 'N Shake monitors its parking lots for signs of spalling or heaving (such as cracks or potholes) but not necessarily identification of or remediation of slope ratios and other relevant disability access violations. Instead the identification of slope issues appears to have been left to the filing of lawsuits such as this. The harm is common to the class.

We therefore find that Plaintiffs have met their burden with respect to the commonality prong.

### 3. Rule 23(a)(3): Typicality

"Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985). Ensuring that absent class members will be fairly protected requires the claims and defenses of the representative to be sufficiently similar not just in terms of their legal form, but also in terms of their factual basis and support. *See, e.g., East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Defendant contends that typicality is not present in this case because there is no common policy spanning its more than 400 locations, unique and varied parking lot designs, differing parties controlling the parking lots and differing parking requirements of certain states. Moreover, certain proposed class members in specific states potentially hold the right to

monetary damages, in addition to those central herein, which are claims for injunctive relief.

We find that Plaintiffs have met their burden with respect to typicality. Here, as explained *supra*, each class member would be challenging the same policy and the claims of the class representatives and class members are based on the same theory. *Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."). To answer these concerns Plaintiffs' counsel has suggested that an injunction could be crafted properly to preserve claims of those class members who wish to pursue state court damage remedies, such that only federal claims would be extinguished.

### 4. Rule 23(a)(4): Adequacy of Class Representation

The adequacy inquiry "has two components designed to ensure that absentees' interests are fully pursued." *See Georgine v. Amchem Prods., Inc*., 83 F.3d 610, 630 (3d Cir.1996), *aff'd,* Amchem, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). First, the adequacy inquiry "tests the qualifications of the counsel to represent the class." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 532 (3d Cir. 2004) (internal citations omitted). The second component of the adequacy inquiry seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.*

As we have recognized before, Plaintiffs have an established record of working to better the lives of individuals with disabilities through advocacy and litigation efforts. We see no compelling evidence of any conflict of interest which would be sufficient to challenge the adequacy of representation prong. The interests of the named Plaintiffs and the proposed class members are fundamentally aligned and Plaintiffs' counsel has the necessary experience and

expertise[2] to represent the interest of the class.

### 5. Rule 23(b)

"Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). "Rule 23(b)(2) applies … when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360 (2011).

Defendant argues that a single injunction cannot possibly provide final relief to putative class members due to the need to make individual determinations. We disagree. As explained above, Plaintiff has proffered evidence that Defendant's policy of ADA compliance is ineffective and that it affects all members of the class.[3] If successful on the merits, a single injunction would provide relief to each member of the class by ensuring within a reasonable period of time that Defendant's parking facilities are barrier free and properly maintained going forward. This case is clearly the type of institutional reform action for which Rule 23(b)(2) was designed.

Finally, we note that Defendant argues that Plaintiffs lack standing to seek injunctive relief because they have no specific intent to return to its restaurants. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110

---

[2] Although it appears Defendant does not contest that Plaintiffs' counsel will adequately represent the interest of the class, we note that counsel are well-known to the court and are most qualified.
[3] Commentators have also noted that the language of (b)(2) does not even require that the defendant's conduct be directed or damaging to every member of the class. See 1 Newberg & Conte § 4.11, at 4–37.

S.Ct. 596, 107 L.Ed.2d 603 (1990).

The record evidence supports a finding that Plaintiffs have standing. They have visited Steak 'N Shake locations in the past and have experienced architectural barriers there, such as having their wheelchairs roll due to sloping. They each live in close proximity to some of the Defendant's locations, and enjoy the restaurants' food and service. And, as courts have noted in published opinions, the decision to visit such establishments is typically impulsive, supporting a likely intent to return. Their injury would likely be redressed by a favorable judicial decision. We therefore find that Plaintiffs have standing to sue.

## III. Conclusion

For the reasons stated herein, the Plaintiffs' Motion for Class Certification will be granted.

Date:  April 27, 2017

/s/ Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHRISTOPHER MIELO and SARAH )
HEINZL, *individually and on behalf of all* )
*others similarly situated*, )     Civil Action No. 15-180
         Plaintiffs, )
   )     Magistrate Judge Robert C. Mitchell
      v. )
   )
STEAK 'N SHAKE OPERATIONS, INC., )
         Defendant. )

## ORDER

AND NOW, to-wit, this 27th day of  April, 2017, Plaintiffs' Motion for Class

Certification (ECF No. 44) is GRANTED and the following Class is certified:

> All persons with qualified mobility disabilities who were or will be denied the full
> and equal enjoyment of the goods, services, facilities, privileges, advantages or
> accommodations of any Steak 'n Shake restaurant location in the United States on
> the basis of a disability because such persons encountered accessibility barriers at
> any Steak 'n Shake restaurant where Defendant owns, controls and/or operates the
> parking facilities.

IT IS FURTHER ORDERED that Plaintiff Christopher Mielo and Plaintiff Sarah Heinzl

are appointed as the representative Plaintiffs for the Class and the law firm Carlson Lynch

Sweet Kilpela & Carpenter, LLP is appointed as counsel for the Class.  This Court will hereafter

enter such further and additional orders relating to the class proceedings as may be required to

advance the administration and disposition of this case.


                         /s/ Robert C. Mitchell
                         Robert C. Mitchell
                         United States Magistrate Judge