IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER MIELO and SARAH HEINZL, | ) | |
| individually and on behalf of all others similarly | ) | |
| situated, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs | ) | Civil Action No. 15-180 |
| | ) | |
| STEAK 'N SHAKE OPERATIONS, INC., | ) | Magistrate Judge Mitchell |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs, Christopher Mielo and Sarah Heinzl, bring this action individually and on behalf of all others similarly situated against Defendant, Steak 'N Shake Operations, Inc. ("Steak 'N Shake"), alleging violations of Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12181 to 12189 (ADA). Specifically, they allege that the facilities at Steak 'N Shake are not fully accessible to and independently usable by individuals who use wheelchairs for mobility, as they do, because of various barriers in the parking lots and along the routes to the building entrances. Moreover, they contend that Steak 'N Shake's company-wide ADA compliance policies and practices are woefully inadequate to ensure that it meets its legal obligation to provide facilities accessible to persons, like them and the proposed class, who have mobility disabilities.

Presently before the Court is a motion for summary judgment or in the alternative partial summary judgment, filed by the Defendant. For the reasons that follow, the motion will be granted in part to dismiss all claims based on 28 C.F.R. § 36.211 and denied in all other respects.

Facts

Plaintiff Christopher Mielo is a disabled individual who uses a wheelchair and has lived

in Churchill, Pennsylvania since 1994. (Mielo Dep. 6:13-17, 7:5-7, 37:15-21.)[1]  In May or June of 2014 or 2015, Mielo visited a Steak 'N Shake at 650 Waterfront Drive, East Munhall (the "Munhall location") and "experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and accessible aisle." (Id. 42:17-43:4, 43:19-21.) Mielo has not returned to the Munhall location. (Id. 55:25-56:7.)  Although Mielo has visited Steak 'N Shakes in Greensburg (once) and Robinson ("maybe" twice), he did not recall experiencing any accessibility issues. (Id. 50:19-51:17, 52:10-17, 55:5-14 (clarifying "Murrysville" as "Greensburg" restaurant).)  Mielo has never visited any of the other Steak 'N Shake locations listed in the Complaint. (Id. 53:19-25, 55:1-22.)

Plaintiff Sarah Beth Heinzl uses a wheelchair for mobility. (Heinzl Dep. 25:17-19.)[2] As of Fall 2015, Heinzl lives in Tucson, Arizona; however, she maintains a residence in Brookline, Pennsylvania. (Id. 6:16-7:5, 7:15-20.)  She contends that in Summer 2014, she visited Steak 'N Shake's 410 Clairton Boulevard, Pleasant Hills location (the "Clairton location") where, despite some alleged difficulties using the access ramp, she "believe[s]" that the difficulty she experienced operating her wheelchair [in the parking space and lot itself] was based upon the "material of the parking lot," not its slope. (Id. 30:19-31:11, 33:12-34:24.) She also stated that she experienced difficulty pushing up the ramp because of the slope.  (Id. 34:7-12.)  Heinzl has visited other Steak 'N Shake locations in the past, including in Tarentum, Mercer and Robinson; however, she did not experience or report any such accessibility issues. (Id. 40:15-21, 41:3-42:18, 43:2-12, 55:1-19.)  Heinzl has never returned to the Tarentum or Mercer locations. (Id. 41:3-22, 43:13- 17.) Heinzl has never visited any of the other Steak 'N Shake locations listed in the Complaint, nor has she ever visited an Arizona Steak 'N Shake, while studying there. (Id.

---

[1] Def.'s App. (ECF No. 99) Ex. 1.
[2] ECF No. 99 Ex. 2.

10:19-11:1, 42:23-43:1, 43:18-44:15.)

Defendant owns, leases, controls, and/or operates approximately 425 restaurants throughout the United States. (Duffner Dep. 11:14-23.)[3] Defendant employs centralized policies and practices with regard to the design, construction, alteration and maintenance of its facilities. (Id. 16:9-17:21, 31:7-32:2, 34:2-16.)[4] Defendant understands it has an obligation to construct its facilities in compliance with ADA regulations and to ensure, post-construction, its facilities are maintained in compliance with the ADA, and actively undertakes efforts to comply with those obligations. (Id.17:4-21, 24:20-25:7, 31:7-32:2.) Defendant understands that parking facilities "should be maintained periodically" to ensure that the condition of asphalt or concrete does not break down, and that a public accommodation such as Defendant has a legal obligation to construct and to maintain parking facilities in compliance with the ADA. (Id. 34:17-35:22, 63:20-64:3, 64:11-14.)

Defendant's operations include a facilities maintenance department, "charged with the responsibility for maintaining corporate-owned facilities throughout the country", including with respect to the maintenance of Defendant's parking facilities. (Id. 16:13-19, 17:4-21, 36:1-4.) Defendant understands that external conditions such as weather can impact and change the grading of a parking lot and sidewalk over time, and that the sloping of parking lots and sidewalks can and does change over time. (Id. 35:12-22; 44:7-21; 45:3-10.) Defendant further understands and acknowledges that a visual inspection alone may be insufficient to identify variations in slope grades "unless you're very well trained." (Id. 45:11-22.)

_____

[3] Pls.' Concise Statement (ECF No. 107) Ex. A.
[4] Defendant denies this statement (and other statements made by Plaintiffs) "to the extent that Plaintiffs seek to summarize the entirety of Mr. Duffner's testimony, which is in writing and speaks for itself." (ECF No. 114 ¶ 2.) However, it is Defendant's responsibility to point to other evidence which contradicts the statement Plaintiffs make from the record.

To ensure its parking facilities are constructed in compliance with the ADA, Defendant relies exclusively on purportedly ADA-compliant design plans and the permit process of local agencies. (Id. 31:7-33:1.) Post-construction, Defendant does not assess its parking facilities for ADA compliance. (Id. 19:17-21:17, 31:1-6, 32:9-14, 71:18-72:24.)

Defendant only conducts an ADA-specific inspection of its parking facilities when a customer complains or files a lawsuit. (Id. 31:1-6.) Accessibility barriers have formed at and within Defendant's parking facilities, as illustrated by the numerous ADA violations detailed in Plaintiffs' Complaint. (Compl. ¶ 21.) Following the initiation of this lawsuit, Defendant found that some claims were valid and others were not. (Duffner Dep. 46:15-49:7.) Defendant admits that, before this lawsuit was filed, it was not aware of any of the ADA violations detailed in Plaintiffs' Complaint, and it engaged in remediation efforts at the properties identified in Plaintiffs' Complaint only as a result of the commencement of this litigation. (Duffner Dep. 46:8-50:5.) Defendant indicates that remediation efforts were made "[t]o all of them to some degree that they were able to effect immediate repairs" (Duffner Dep. 50:4-5), but was unaware if some repairs were planned for a later date (id. 50:6-8).

Procedural History

Plaintiffs filed this action on February 10, 2015. Federal question jurisdiction is based on the ADA claim, 28 U.S.C. § 1331; 42 U.S.C. § 12188(a). They allege that the cited violations constitute "a failure to remove architectural barriers" in violation of 42 U.S.C. § 12182(b)(2)(A)(iv) and a failure to alter, design or construct accessible facilities after the effective date of the ADA in violation of § 12183(a)(1) and the appropriate regulations, which will deter them and similarly situated individuals from returning to Defendant's facilities and that, without injunctive relief, they will be unable to fully access Defendant's facilities in

4

violation of their rights under the ADA. (Compl. ¶¶ 37-47.) They also bring this action on

behalf of all others similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of

Civil Procedure. (Compl. ¶¶ 31-36.)

On November 4, 2016, Plaintiffs filed a motion to certify class (ECF No. 44). Defendant

filed its response in opposition on January 31, 2017 (ECF No. 60) and Plaintiff filed a reply brief

on February 28, 2017 (ECF No. 68). A hearing was held on the class certification motion on

March 20, 2017.

On April 27, 2017, a Memorandum Opinion and Order was filed which granted

Plaintiffs' motion and certified a class as follows:

> All persons with qualified mobility disabilities who were or will be denied the full
> and equal enjoyment of the goods, services, facilities, privileges, advantages or
> accommodations of any Steak 'n Shake restaurant location in the United States on
> the basis of a disability because such persons encountered accessibility barriers at
> any Steak 'n Shake restaurant where Defendant owns, controls and/or operates the
> parking facilities.

(ECF No. 73 at 17.)

Defendant sought leave to appeal from the Court of Appeals and leave was granted on

July 28, 2017 (ECF No. 77). The case was stayed in this Court pending disposition of the appeal

(ECF Nos. 84, 85). On July 26, 2018, the Court of Appeals entered an order reversing the

decision of this Court and remanding the case for further proceedings (ECF No. 86). The

opinion was published as Mielo v. Steak 'N Shake Operations, Inc., 897 F.3d 467 (3d Cir. 2018).

The opinion held as follows:

1) Plaintiffs had standing because they suffered an injury in fact when they encountered

difficulties ambulating in Steak 'N Shake parking lots, allegedly because Steak 'N Shake failed

to adopt policies to seek out and correct access violations, they suffered concrete harm in having

to ambulate through parking facilities that were not ADA-compliant and their injuries were

actual not hypothetical; the injuries were traceable to Steak 'N Shake; and their injuries were likely to be redressed by a favorable judicial decision because, even though they requested only the adoption of policies it was likely that the restaurants would adhere to the policies and correct any ADA violations that were discovered, particularly if the Court retained jurisdiction over the case as Plaintiffs proposed.

2) This Court erred in certifying a class when "doubt" existed, using a "relaxed" class certification standard that did not survive the 2003 amendments to Rule 23 of the Federal Rules of Civil Procedure.

3) Plaintiffs failed to meet the numerosity standard under Rule 23(a)(1) because census data (showing that there are between 14.9 and 20.9 million persons with mobility disorders in the United States and therefore it is "highly likely" that at least 40 of them experienced access violations at Steak 'N Shake restaurants) was not sufficient to speculate in this manner; the same result applied to a statement made by a Steak 'N Shake executive (itself speculation); and Plaintiffs' request for a "relaxed" standard in cases of injunctive and declaratory relief was based on an overly expansive reading of a statement in In re Modafnil Antitrust Litigation, 837 F.3d 238, 252-53 (3d Cir. 2016) that merely described one factor within a non-exhaustive list of six and did not articulate a relaxed standard.

4) The Court's defined class was too broad for the commonality factor under Rule 23(a)(2), referring to any persons who "encountered accessibility barriers at any Steak 'N Shake restaurant" and thus was not limited to the parking lot issues (also would include bathroom doors, water fountains, etc.); in fact, there are multiple distinct parking lots issues (ramp slope, location of "accessible" parking signage, etc.).

5) The case is remanded for Plaintiffs to redefine the class to try to meet the numerosity

and commonality factors and to come up with a single injunction that would provide to all members of the class, Rule 23(b)(2); <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 360 (2011).

On November 7, 2018, Defendant filed the pending motion for summary judgment or, in the alternative, partial summary judgment (ECF No. 96). On December 27, 2018, Plaintiffs filed a brief in opposition (ECF No. 106) and on January 28, 2019, Defendant filed a reply brief (ECF No. 113).

<u>Standard of Review</u>

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." <u>National State Bank v. Federal Reserve Bank</u>, 979 F.2d 1579, 1582 (3d

Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. <u>Hugh v. Butler County Family YMCA</u>, 418 F.3d 265, 266 (3d Cir. 2005); <u>Doe v. County of Centre, Pa.</u>, 242 F.3d 437, 446 (3d Cir. 2001).

Defendant argues that: 1) there is no obligation under 28 C.F.R. § 36.211 for it to create a maintenance policy or practice to identify and repair barriers to access, both because the regulation says nothing about it and because such a requirement would be in tension with the obligation to remove barriers "where it is readily achievable to do so," and Plaintiffs conceded on appeal that the regulation imposes no such requirement, to conclude otherwise would raise constitutional problems by creating a vague obligation which Steak 'N Shake was unaware of and which would be impossible to meet, in addition to which there is no private cause of action under Section 211; and 2) Plaintiffs have failed to demonstrate that they have standing, particularly the requirement of establishing traceability as there is no basis for tracing Plaintiffs' injuries or barriers they encountered to a policy or lack of one by Steak 'N Shake.

Plaintiffs respond that: 1) Defendant has mischaracterized our theory, which is not that Steak 'N Shake needs to seek out potential violations but rather that it needs to ensure—post construction—that its facilities remain compliant under the ADA, parking lot slopes can be kept in "working condition" as can "accessible routes" and the regulations urge public accommodations to establish procedures for ongoing assessment of compliance, and Defendant improperly raises financial concerns but the standards already account for this issue by referring to "undue burdens" and "readily achievable" measures; 2) Section 211 is not unconstitutionally vague, rather the Department of Justice (DOJ) provides extensive guidelines, standards, technical

materials, manuals and handbooks; 3) there is a private right of action provided in 28 C.F.R. § 36.501; and 4) Plaintiffs have standing because Defendant's policy allows problems to persist and individuals are eventually injured or bring suit.

In a reply brief, Defendant argues that: 1) to the extent that Plaintiffs seek relief under Section 211, they cannot pursue it under that regulation and if not, Steak 'N Shake is still entitled to partial summary judgment as to any claim they have asserted under Section 211; 2) Title III requires public accommodations to ensure that new construction meets certain standards, to undertake alterations in compliance with the ADA and to remove barriers where it is readily achievable but not to maintain a policy of looking for potential problems, and Plaintiffs admitted as much on appeal; 3) Section 501 cannot create a right to pursue a violation of another regulation unless Congress has already created the right and it has not; and 4) Plaintiffs lack standing not as to individual locations they visited but as to the "maintenance policy" which relies upon the private right of action and permanent inspect-and-repair obligations that Section 211 does not impose.

Scope of ADA Relief

Title III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128 (2005). Specifically, it requires, inter alia, "places of public accommodation" to "remove architectural barriers … in existing facilities … where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), and to "design and construct facilities for first occupancy [no] later than 30 months after July 26, 1990 that are readily accessible to and usable by individuals with disabilities," § 12183(a). Places of public accommodation include "a restaurant, bar, or other establishment serving food or drink," § 12181(7)(B), and thus include Steak 'N Shake. Failure

to meet these requirements constitutes a violation of the ADA which may be enforced by individuals bringing suit for injunctive relief in federal court, § 12188(a). The statute further states that "injunctive relief shall also include … modification of a policy…." Id.

"Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available." Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citation omitted). See 42 U.S.C. § 12188(a) (providing that the remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a-3(a), which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964); Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968) (noting that Title II allows for injunctive relief only).

In addition to § 12188(a)(2), Plaintiffs also rely on 28 C.F.R. §§ 36.211 and 36.501. The first regulation states that:

> (a) A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.
>
> (b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs.
>
> (c) If the 2010 Standards reduce the technical requirements or the number of required accessible elements below the number required by the 1991 Standards, the technical requirements or the number of accessible elements in a facility subject to this part may be reduced in accordance with the requirements of the 2010 Standards.

28 C.F.R. § 36.211.[5]

The second provision states that:

> (a) General. Any person who is being subjected to discrimination on the basis of disability in violation of the Act or this part or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation

---

[5] The 2010 Standards are found at 36 C.F.R. pt. 1191, App. B & D.

of section 303 of the Act or subpart D of this part may institute a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order. Upon timely application, the court may, in its discretion, permit the Attorney General to intervene in the civil action if the Attorney General or his or her designee certifies that the case is of general public importance. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security. Nothing in this section shall require a person with a disability to engage in a futile gesture if the person has actual notice that a person or organization covered by title III of the Act or this part does not intend to comply with its provisions.

(b) Injunctive relief. In the case of violations of §§ 36.304, 36.308, 36.310(b), 36.401, 36.402, 36.403, and 36.405 of this part, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the Act or this part. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by the Act or this part.

28 C.F.R. § 36.501.

The parties argue at length over the wording of Section 211. Defendant contends that it says nothing about creating a policy to inspect for and repair barriers, that the phrase "maintain in operable working condition those features of facilities and equipment" in no way suggests an affirmative obligation to seek out any and all barriers to access and repair them, that "features" is vague and ambiguous, that parking lot slopes do not constitute "facilities and equipment" and that the kind of obligation Plaintiffs seek to read into Section 211was in fact imposed by the DOJ on Title II entities in 28 C.F.R. §§ 35.105(a) (requiring any public entity to perform a one-time evaluation of its "current services, policies and practices" and modify them as necessary) and 35.150(d)(1) (requiring public entities to develop a transition plan setting forth the steps necessary to make structural changes to facilities) and thus it does not apply here.

Plaintiffs respond that Defendant has ignored the word "maintain" which requires ongoing action by a public accommodation, that Section 211 is not limited only to mechanical

equipment as indicated in a DOJ guidance, that "accessible routes" can be maintained in "operable working condition" as indicated in DOJ guidances and technical assistance manuals, that the obligation to maintain facilities is ongoing, that Congress intended to place the burden to identify discriminatory conditions on public accommodations rather than individuals and that Defendant is well aware of its obligations under Section 211 but willfully chooses not to comply.

The parties agree that, if alerted to a problem at one of its restaurants, including those identified in the Complaint (accessible parking spaces, access aisles and routes to the facility entrance the slopes of which exceeded 2.1%, accessible spaces not marked with required signs, no spaces marked as "van accessible," signs mounted less than 60 inches above the finished surface, a route to the facility with a running slope which exceeded 5.0%, and a curb ramp with an excessive running slope), Steak 'N Shake would have an obligation to remedy the issue. The question presented is whether the ADA or its regulations place a burden on Steak 'N Shake to seek out and find these compliance issues or whether Steak 'N Shake is obligated to act only when alerted to their existence.

Unfortunately for Plaintiffs, the wording of Section 211 simply does not support the burden they wish to place on Steak 'N Shake. It is true that the word "maintain" contemplates an ongoing duty, and Steak 'N Shake admits that its duty to operate ADA-compliant facilities is ongoing. "This section recognizes that it is not sufficient to provide features such as accessible routes, elevators, or ramps, if those features are not maintained in a manner that enables individuals with disabilities to use them." 28 C.F.R. pt. 36, App. C, § 36.211. See Lozano v. C.A. Martinez Family Ltd. P'ship, 129 F. Supp. 3d 967, 973 (S.D. Cal. 2015) (plaintiff submitted evidence that the painted surface of the accessible parking spots had faded to the point that the markings were nonexistent or barely visible, and thus was entitled to an injunction requiring the

defendant to repaint them).

Further, Section 211 is not limited only to mechanical equipment. As a DOJ guidance explains:

> The Department has noticed that some covered entities do not understand what is required by § 36.211, and it would like to take the opportunity presented by this NPRM to clarify. Section 36.211(a) broadly covers all features that are required to be accessible under the ADA, from accessible routes and elevators to roll-in showers and signage. It is not sufficient for a building or other feature to be built in compliance with the ADA, only to be blocked or changed later so that it is inaccessible. A common problem observed by the Department is that covered facilities do not maintain accessible routes. For example, the accessible routes in offices or stores are commonly obstructed by boxes, potted plants, display racks, or other items so that the routes are inaccessible to people who use wheelchairs. Under the ADA, the accessible route must be maintained and, therefore, these items are required to be removed. If the items are placed there temporarily—for example, if an office receives multiple boxes of supplies and is moving them from the hall to the storage room—then § 36.211(b) excuses such "isolated or temporary interruptions." Other common examples of features that must be maintained, and often are not, are platform lifts and elevators. Public accommodations must ensure that these features are operable and, to meet this requirement, regular servicing and making repairs quickly will be necessary.

Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34508-01, 34523 (June 17, 2008). And contrary to Defendant's assertion, the word "facility" is not vague; it "means all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 36.104. Thus, it would cover access aisles, accessible parking spaces and curb ramps in the parking lot.

Plaintiffs contend that "accessible routes"[6] can be maintained in "operable working

---

[6] The 2010 ADA Accessibility Guidelines define an "accessible route" as "[a] continuous unobstructed path connecting all accessible elements and spaces of a building or facility. Interior accessible routes may include corridors, floors, ramps, elevators, lifts, and clear floor space at fixtures. Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at

condition," citing an ADA guide which states that "towns must maintain in operable working condition those features that are necessary to provide access to services, programs, and activities—including elevators and lifts, curb ramps at intersections, accessible parking spaces, ramps to building or facility entrances, door hardware, and accessible toilet facilities." US DOJ, ADA Guide for Small Towns, Civil Rights Division, Disability Rights Sections (April 2000).[7] This document is about Title II, rather than Title III. Plaintiffs also note that a DOJ technical assistance manual states that public accommodations are required to, inter alia: "maintain curb ramps and sidewalks to prevent large cracks and uneven surfaces from forming." US DOJ, Maintaining Accessible Features in Retail Establishments.[8]

Nevertheless, a public accommodation can fulfill these duties by making repairs when it finds problems or when problems are brought to its attention, which is not the same proposition as requiring it to create a policy to inspect for such problems. Plaintiffs' argument fails when they attempt to place the burden to inspect for such potential issues on the public accommodation, a position that is not supported anywhere in the statute or regulations. Plaintiffs cite to a section of the ADA indicating that the intent of the statute was "to make it easier for people with disabilities to obtain protection under the ADA." 28 C.F.R. § 36.101(b). And they argue that public accommodations have been expressly put on notice of what they are required to do, including the ongoing duties to construct accessible facilities, remove barriers and maintain accessibility, by virtue of the ADA and its implementing regulations. 28 C.F.R. § 36.401 et seq.; Standards § 4 et seq; 73 Fed. Reg. 34508-01, 34523.

As noted above, the DOJ imposed inspection requirements on Title II entities in 28

---

vehicular ways, walks, ramps, and lifts." 28 C.F.R. pt. 36, App. D, § 3.5.
[7] Available at https://www.ada.gov/smtown.htm#anchor19789.
[8] Available at https://www.ada.gov/business/retail_access.htm.

C.F.R. §§ 35.105(a) (requiring any public entity to perform a one-time evaluation of its "current services, policies and practices" and modify them as necessary) and 35.150(d)(1) (requiring public entities to develop a transition plan setting forth the steps necessary to make structural changes to facilities). Section 211 contains no such language.

In fact, a DOJ regulatory guidance on Title III states that:

> Although the obligation to engage in readily achievable barrier removal is clearly a continuing duty, the Department has declined to establish any independent requirement for an annual assessment or self-evaluation. It is best left to the public accommodations subject to § 36.304 to establish policies to assess compliance that are appropriate to the particular circumstances faced by the wide range of public accommodations covered by the ADA. However, even in the absence of an explicit regulatory requirement for periodic self-evaluations, the Department still urges public accommodations to establish procedures for an ongoing assessment of their compliance with the ADA's barrier removal requirements. The Department recommends that this process include appropriate consultation with individuals with disabilities or organizations representing them. A serious effort at self-assessment and consultation can diminish the threat of litigation and save resources by identifying the most efficient means of providing required access.

28 C.F.R. Pt. 36, App. C, § 36.304. Plaintiffs invoke this paragraph to argue that, while public accommodations may have discretion to establish procedures for ongoing assessment, they do not have "permission to indefinitely ignore discriminatory conditions or to wait until they deter or deny access to someone with a disability." (ECF No. 106 at 11.) However, they cannot escape the plain language of this guidance, namely that the DOJ does not impose any independent requirement for assessment or self-evaluation. If a public accommodation allows conditions to deteriorate to the point that an individual with a disability is deterred or denied access, that individual can sue for an ADA violation, but this does not mean that the public accommodation is also independently liable for failing to notice the condition in the first place.

The Court of Appeals made these observations in the case on appeal:

> Plaintiffs implicitly argue that it would be good policy to interpret Section

211 to require places of public accommodation to actively *seek out* access violations, as compared to correcting access violations as they are discovered. See Appellee Br. 37 (arguing that Steak 'n Shake "effectively ... push[es] its obligation to maintain the accessibility of its restaurants onto customers"). But while relieving customers of the burden of bringing access violations to the attention of restaurants might be good policy, it appears to be in tension with the very policy which Congress codified in the text of the ADA.

In enacting the ADA, Congress made clear that "the nature and cost" of a particular action, as well as "the overall financial resources of the facility or facilities involved in the action," must be taken into account when determining whether a particular access violation constitutes ADA "discrimination" that must be corrected. 42 U.S.C. § 12181(9). In doing so, Congress heeded the obvious: places of public accommodation have finite resources to allocate to correcting access violations.

The text of the ADA seems to suggest, then, that disabled patrons like Mielo and Heinzl are better served when restaurants are required to spend their limited financial resources on correcting only the access violations that disabled patrons have actually brought to the restaurant's attention—rather than requiring those establishments to expend their limited resources in an ongoing search for potential violations that may not exist.

Mielo, 897 F.3d at 478 n.10.

The mandate rule, a species of the law of the case doctrine, requires district courts to adhere to the mandate of the court of appeals on remand, Casey v. Planned Parenthood of Southeastern Pennsylvania, 14 F.3d 848, 856 (3d Cir. 1994), but this rule does not extend to dicta or matters that the court of appeals did not decide. Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979). The Court of Appeals, on appeal of the class action certification decision of this Court, explicitly stated that "in light of our inability to fully engage the merits at this state of the litigation, we are not at liberty to decide whether Plaintiffs' novel interpretation of the ADA and its corresponding regulations would survive a dispositive motion under either Rule 12(b)(6), or Rule 56 of the Federal Rules of Civil Procedure." 897 F.3d at 478. Thus, the Court of Appeals was not addressing the merits Plaintiffs' claim and this Court is not bound by the comments

made by the Court of Appeals in a footnote.[9]  Nevertheless, "cogent dicta are likely to command

substantial respect both on remand to a lower court and on subsequent appeal to the same court."

18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure

§ 4478 (2d ed. 2002).

As observed by the Court of Appeals, the ADA requires public accommodations to

"remove architectural barriers" where such removal is "readily achievable," 42 U.S.C.

§ 12182(b)(2)(A)(iv), and defines "readily achievable" as:

> easily accomplishable and able to be carried out without much difficulty or
> expense. In determining whether an action is readily achievable, factors to be
> considered include—
>
> (A) the nature and cost of the action needed under this chapter;
>
> (B) the overall financial resources of the facility or facilities involved in
> the action; the number of persons employed at such facility; the effect on
> expenses and resources, or the impact otherwise of such action upon the operation
> of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of
> the business of a covered entity with respect to the number of its employees; the
> number, type, and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the
> composition, structure, and functions of the workforce of such entity; the
> geographic separateness, administrative or fiscal relationship of the facility or
> facilities in question to the covered entity.

§ 12181(9).  See also 28 C.F.R. § 36.304(a). Plaintiffs argue that this provision addresses the cost

of removing the barriers, not the cost of identifying them in the first instance. Although this is a

true statement, it misses the larger point, which is that Congress and the DOJ have not indicated

that the costs of remedying ADA violations should always be borne by the public

---

[9] On the other hand, Plaintiffs argue that "the court reduced Plaintiffs' theory of harm with
respect to Section 211 to a theory that Plaintiffs never advanced."  (ECF No. 106 at 5 n.4.)  This
Court is bound by the Court of Appeals' description of theory of harm that Plaintiffs presented to
it and which they appear to be presenting again here, although they disavow it.

accommodation. As for the costs of identifying the violations, it could be argued that Congress, in enacting 42 U.S.C. § 12188—which allows individuals to bring suit for ADA violations and obtain injunctive relief, and also § 12205, which allows for their lawyers to collet reasonable attorney's fees for bringing such suits—recognized that individuals with disabilities are often in a better position to notice such problems and bring them to the attention of the public accommodation.

Defendant also notes that even newly-built facilities are permitted to deviate from building standards in certain circumstances. See 36 C.F.R. Pt. 1191, App. B, § 104.1.1 (conventional industry tolerances); 28 C.F.R. § 36.401(c)(1) (structural impracticability because of terrain or other factors prevent incorporation of accessibility features). But Plaintiffs' proposal to conduct inspections for potential violations contains no individualized analysis and would seemingly require permanent ongoing obligations to guarantee Steak 'N Shake's compliance with all of the requirements in the 2010 ADA Standards.

For all the reasons identified by the Court of Appeals and by Defendant, Plaintiffs have not demonstrated that Section 211 contains a requirement that Steak 'N Shake adopt a policy of identifying potential ADA violations such as the slope of the access aisles in its parking lots. Plaintiffs attempt to argue that this is not the gravamen of their Complaint, but their awkward change of course does not alter the situation. Although Plaintiffs now argue that their claim is based on Defendant's failure to "maintain" its parking lot in "operable condition" as explained above, Defendant does not contest that a particular parking lot that falls out of operable condition (that is, that develops an excessive slope, for example) cannot be the source of an action under the ADA, only that its failure to seek out and find such a violation cannot itself form the basis of an ADA complaint. They contend that Defendant has no policy to inspect for ADA violations

such as the parking lot issues cited herein, but also argue that they "seek a modification of Defendant's existing policy in order to remedy its discriminatory impact." (ECF No. 106 at 2.) Perhaps, after reading the opinion of the Court of Appeals, Plaintiffs had to revise their approach to this case, but in any event, they cannot maintain their claim to the extent that it is based on Section 211.

Constitutional Analysis

Defendant also argues that, if Section 211 were interpreted as Plaintiffs construe it, such a construction would violate two constitutional principles: vagueness and lack of fair notice. Plaintiffs contend that Section 211 presents no constitutional problems.

Plaintiffs cite to the ADA building standards and certain other DOJ-issued materials that they contend are sufficiently specific to prevent a due process violation. But as Defendant notes, the building standards are specifically designed and written to provide guidance for new construction and alterations, but Section 211 contains no such standards for frequency, scope, depth of inspection or timeline for remediation. As such, it does not provide "fair notice of conduct that is forbidden or required," F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012), and would be also void for vagueness if it imposed on public accommodations the requirement of adopting a policy of searching for potential ADA violations as Plaintiffs contend.

Plaintiffs contend that the "obligation to engage in readily achievable barrier removal is a continuing one." ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities, III-4.4400.[10] However, they have not explained how this addresses the issue: is the duty to inspect they seek to imply on an annual basis? Is it more frequently? They also cite materials indicating that allowing obstructions "to persist beyond a reasonable

---

[10] Available at https://www.ada.gov/taman3.html.

period of time would violate [Section 211]." 28 C.F.R. Pt. 36, App. C, § 36.211. However, their Complaint does not allege that Steak 'N Shake was aware of parking lot access violations and allowed them to persist "beyond a reasonable period of time," but rather than Steak 'N Shake failed to seek out and find the problems within a reasonable time. Thus, their proposed reading of Section 211 would also raise constitutional problems of vagueness and lack of notice.

Private Cause of Action

Defendant also argues that Section 211 does not provide Plaintiffs with a private cause of action, even if the regulation could be read as broadly as they contend. Plaintiffs respond that Section 501 provides a private cause of action, but Defendant replies that one regulation cannot provide a private cause of action for violation of another regulation unless Congress has so indicated.

The Supreme Court has held that:

> Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. Touche Ross & Co. v. Redington, 442 U.S., at 577, n. 18, 99 S.Ct. 2479 ("[T]he language of the statute and not the rules must control"). Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.

Alexander v. Sandoval, 532 U.S. 275, 291 (2001). The Court of Appeals has held that, when regulations "focus on the person regulated rather than individuals protected" and have an "aggregate focus," rather than an individual one, they create "no implication of an intent to confer rights on a particular class of persons," and therefore create no enforceable right of action. Three Rivers Ctr. for Independent Living, Inc. v. Housing Auth. of City of Pittsburgh, 382 F.3d 412, 429-30 (3d Cir. 2004). In that case, the court held that a regulation promulgated under

Section 504 of the Rehabilitation Act, 24 C.F.R. § 8.22(a), did not provide a private right of action. Similarly, a district court held that regulations implementing Title II of the ADA, specifically 28 C.F.R. §§ 35.130(d) and 41.51(d), did not provide a private cause of action. Zatuchni v. Richman, 2008 WL 3408554, at *11-12 (E.D. Pa. Aug. 12, 2008). See also Abrahams v. MTA Long Island Bus, 644 F.3d 110, 118-19 (2d Cir. 2011) (49 C.F.R. § 37.137(c), which created a procedural requirement that public entities permit ongoing public participation in developing and assessing paratransit services, could not be enforced as a private cause of action under 42 U.S.C. § 12143 of the ADA because the regulation's "ongoing requirement" had a broader application than the implementation of the initial plan or submission of annual updates set forth under the statute); Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 914 (6th Cir. 2004) (28 C.F.R. § 35.150(d) may create a procedural requirement that encourages public entities to consider and plan ways in which they will accommodate the disabled, but there is no indication that a public entity's failure to develop a transition plan harms disabled individuals, much less in a way that Title II aims to prevent or redress).

Section 211 focuses on the regulated entity ("A public accommodation shall"), not the protected individuals.[11] Plaintiffs attempt to distinguish Three Rivers on the ground that a public accommodation's failure to comply with Section 211 will necessarily deny access to that accommodation. However, as Defendant notes, many potential violations of Section 211, including many of those alleged by Plaintiffs, are highly technical and would not necessarily result in a denial of access. They also cite cases such as Shariff v. Radamar Meat Corp., 2014 WL 1311563, at *3 (E.D.N.Y. Feb. 14, 2014), as enforcement actions under regulations such as

---

[11] Defendant notes that at least one district court has held that there is no private right of action even under the DOJ's inspect-and-repair obligations under Title II, 28 C.F.R. § 36.105. See Cherry v. City College of San Francisco, 2005 WL 2620560, at *4 (N.D. Calif. Oct. 14, 2005).

28 C.F.R. §§ 36.304(b) and 36.402(b).  However, the court found the defendant liable pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv) for failing to remove architectural barriers and only cited to the regulations to conclude that the plaintiff could obtain an injunction that would require the defendant to create accessible parking spaces.  The court did not find the defendant independently liable under the regulation, much less find it liable for having failed to notice that it lacked accessible parking spaces.

Standing

The Supreme Court has held that:

> In every federal case, the party bringing the suit must establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The standing requirement is born partly of "'an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting Vander Jagt v. O'Neill, 699 F.2d 1166, 1178–1179 (C.A.D.C. 1982) (Bork, J., concurring)).

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004).  The Court has explained that:

> In Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), we held that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc., 528 U.S. 167, 180-81 (2000).

Defendant argues that Plaintiffs cannot meet the element of traceability because they cannot demonstrate that their injuries were "caused" by Steak 'N Shake's alleged unlawful corporate practices.  That is, Plaintiffs cannot connect the single injuries they suffered (encountering a non-compliant slope at a Steak 'N Shake parking lot, for example) to Steak 'N

Shake's failure to adopt a maintenance policy because the barrier to access may be the result of improper construction, faulty modification, weather, an inadequate policy, rogue disobedience of the policy, poor execution of the policy or some other cause.

The Court of Appeals has stated that:

> The second element of Article III standing is causation. This element requires the alleged injury to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." This requirement is "akin to 'but for' causation" in tort and may be satisfied "even where the conduct in question might not have been a proximate cause of the harm." An "indirect causal relationship will suffice," provided that "there is a 'fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.'"

Finkelman v. National Football League, 810 F.3d 187, 193-94 (3d Cir. 2016) (footnotes omitted).  In this case, the Court of Appeals indicated that, "While Plaintiffs will face a heavier burden to establish causation should they eventually be put to their proof, their burden of establishing causation at the pleadings stage is less stringent."  Mielo, 897 F.3d at 481.  Thus, as Defendant notes, Plaintiffs cannot simply rely on their pleadings as they did previously.

Plaintiffs contend that they have satisfied the requirement of standing with respect to the individual barriers they encountered, but as Defendant observes, that is not the issue.  They also rely on this Court's opinion in Heinzl v. Cracker Barrell Old Country Stores, Inc., in which the undersigned suggested that:

> Under Defendant's construction of the ADA, it could even have an express policy of ignoring architectural barriers at its stores, then (only when it is sued over such barriers and it has contested the suit for some time), remediate the barrier and put an end to the matter. As Plaintiff observes, the ADA was not intended to work in this fashion: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

2016 WL 2347367, at *18 (W.D. Pa. Jan. 27, 2016), report and recommendation adopted as

modified, 2016 WL 1761963 (W.D. Pa. Apr. 29, 2016). However, this opinion predated the Court of Appeals' decision in this case and its skepticism that the lack of a corporate maintenance policy would provide plaintiffs with standing in such a circumstance.

Plaintiffs have failed to demonstrate how their individual injuries can be traced to Steak 'N Shake's lack of a maintenance policy, as opposed to a myriad of other potential causes. For this reason, also, Defendant's motion for summary judgment will be granted.

Conclusion

To the extent that Plaintiffs' claims are based on Section 211, the motion for summary judgment will be granted. However, Defendant has not claimed or demonstrated that it has remedied the violations cited in the Complaint, nor is it clear that the entire case is subject to dismissal at this time. Therefore, the motion for summary judgment will be granted in part, and the parties can then articulate what remains to be litigated in this case.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER MIELO and SARAH HEINZL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs | ) | Civil Action No. 15-180 |
| | ) | |
| STEAK 'N SHAKE OPERATIONS, INC., | ) | Magistrate Judge Mitchell |
| Defendant. | ) | |

<u>ORDER</u>

AND NOW, this 25th day of March, 2019, for the reasons explained in the opinion above,

IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendant, Steak 'N Shake Operations, Inc. (ECF No. 96) is granted to the extent that Plaintiffs' claims are based on 28 C.F.R. § 36.211 and denied in all other respects.

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge